UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JESSE SUTHERLAND,           ) | Civil Action No. 21-cv-10902 |
| Plaintiff                             ) | |
| v.                                     ) | |
| PETERSON'S OIL SERVICE, INC.   ) | |
| Defendant                         ) | |

**FIRST AMENDED**
**COMPLAINT AND DEMAND FOR JURY TRIAL**

**INTRODUCTION**

This action is brought by the Plaintiff Jesse Sutherland ("the Plaintiff") against the Defendant Peterson's Oil Service, Inc. ("Peterson" or "the Defendant") alleging: failure to accommodate, disability discrimination, and retaliation in violation of Mass. Gen. Laws Ch. 151B; disability discrimination and retaliation in violation of the Americans with Disabilities Act; earned sick time retaliation in violation of Mass. Gen. Laws Ch. 149; violation of the federal False Claims Act; violation of the Massachusetts False Claims Act; and termination in violation of public policy.

**PARTIES**

1. The Plaintiff is an individual with a residence in Worcester, Massachusetts.

2. The Defendant Peterson, with approximately 100 employees, is a business specializing in oil service, plumbing, and equipment installation with a business address of 75 Crescent Street, Worcester, Massachusetts.

**JURISDICTION AND VENUE**

3. The Court has jurisdiction of the dispute as the damages claimed will be of a value greater than $50,000.00 and pursuant to its powers in equity. See G.L. c. 212, §3 et seq. Additionally, and alternatively, the Court has jurisdiction over this dispute pursuant to G.L. c. 151B, §§ 4, 9.

1

4.     Venue is proper as the Plaintiff and the Defendant reside in Worcester County.

**FACTS**

5.     On August 27, 2019, the Plaintiff was hired by the Defendant.

6.     Shortly after starting work, he began experiencing significant pain in his right knee.

7.     In November of 2019, the Plaintiff sought treatment for his knee. His primary care doctor recommended that he consult with a surgeon.

8.     On November 20, 2019, the Plaintiff met with surgeon Dr. Busconi, who sent him for an MRI.

9.     On December 17, 2019, the Plaintiff had a follow-up consultation with Dr. Busconi. He was placed on limited work hours (6 hours per day/5 days per week). He provided the Defendant a note to that effect.

10.    The Defendant did not engage in the interactive process upon receipt of this request for an accommodation. Instead, it required the Plaintiff to work full duty on an injured knee.

11.    On January 27, 2020, the Plaintiff had arthroscopic surgery to repair meniscus tears in his knee. He went on a leave of absence from work for eight weeks to recover. Eventually, he began to receive short-term disability benefits during that time.

12.    The Plaintiff's recovery went well and, on April 3, 2020, Dr. Busconi cleared him to return to work on April 20.

13.    On April 8, 2020, the Plaintiff informed the Defendant's Vice President, Kristen Peterson ("VP Peterson"), via text message that he had been cleared to return to work full duty later that month. This was the customary way that he communicated with VP Peterson. The Plaintiff continued to contact VP Peterson on April 9, April 10 through April 14.

14. The Defendant never outright terminated the Plaintiff, but instead ignored him after his surgery and did not offer him any further shifts. This occurred despite the Defendant having ample work for him to perform.

15. On October 5, 2020, the Plaintiff filed a charge with the Massachusetts Commission Against Discrimination ("MCAD"). On March 15, 2021, the MCAD permitted the Plaintiff to voluntarily withdraw that complaint.

16. On March 11, 2021, the Plaintiff received a private right of action letter from the Massachusetts Attorney General.

**UNSAFE LEVELS OF BIODIESEL IN DEFENDANT'S PRODUCT**

17. During Plaintiff's employment, Peterson manufactured a proprietary blend of biodiesel and heating oil it calls "Bioheat."

18. During Plaintiff's employment, Peterson marketed Bioheat as efficient and good for the environment.

19. According to United States Department of Energy, fuel must be comprised of five percent (5%) or less biodiesel to meet ATSM International specification D396. Federated Mutual Insurance Co. v. Peterson's Oil Service, Inc., No. 22-10517, Doc. Nos. 1, 1-2 (D. Mass., filed April 7, 2022).

20. Massachusetts state contracts restrict biodiesel content to no more than five percent (5%). See https://www.masslive.com/worcester/2021/03/peterson-oil-in-worcester-agrees-to-pay-450000-after-delivering-heating-fuel-that-violated-state-contracts.html.

21. During Plaintiff's employment, Bioheat contained significantly more biodiesel than five percent (5%).

22. During Plaintiff's employment, Bioheat often contained 80% biodiesel.

23. Because of the high level of biodiesel, Bioheat freezes up in the winter, which caused damage to Peterson customers, including the Commonwealth of Massachusetts and residents thereof. See https://www.masslive.com/worcester/2021/03/peterson-oil-in-worcester-agrees-to-pay-450000-after-delivering-heating-fuel-that-violated-state-contracts.html; <u>Federated Mutual Insurance Co. v. Peterson's Oil Service, Inc.</u>, No. 22-10517, Doc. No. 1, 1-2 (D. Mass., filed April 7, 2022).

24. Upon information and belief, during Plaintiff's employment, Peterson provided Bioheat to municipalities in the Commonwealth, including housing authorities, in Massachusetts.

25. During Plaintiff's employment, Peterson provided Bioheat to municipalities in Rhode Island.

26. Upon information and belief, during Plaintiff's employment, Peterson derived federal revenue for Bioheat through the federal Low Income Home Energy Assistance Program (LIHEAP).

27. Upon information and belief, during Plaintiff's employment, Peterson derived state revenue for Bioheat through the Massachusetts Low Income Home Energy Assistance Program, known commonly as Fuel Assistance.

28. During Plaintiff's employment, Peterson collected Massachusetts tax credits for producing Bioheat.

29. During Plaintiff's employment, Peterson collected Massachusetts tax credits for distributing Bioheat.

30. Upon information and belief, during Plaintiff's employment, Peterson collected federal money for producing Bioheat.

31. Upon information and belief, during Plaintiff's employment, Peterson collected federal money for distributing Bioheat.

32. As evidence that Peterson knew Bioheat contained unsafe levels of biodiesel, Peterson underreported the amount of biodiesel in its fuel to its customers. Federated Mutual Insurance Co. v. Peterson's Oil Service, Inc., No. 22-10517, Doc. Nos. 1, 1-2 (D. Mass., filed April 7, 2022).

33. Peterson Oil reported to Massachusetts Department of Energy Resources (DOER) that, on average, it delivered thirty-five percent (35%) biodiesel between 2015 and 2018. In many months in that timeframe, Peterson Oil delivered fuel with seventy percent (70%) or more biodiesel, further evidencing Peterson's knowledge that Biofuel does not conform with federal and state standards and/or is unsafe. Federated Mutual Insurance Co. v. Peterson's Oil Service, Inc., No. 22-10517, Doc. Nos. 1, 1-2 (D. Mass., filed April 7, 2022).

34. As further evidence of knowledge, before Plaintiff's employment, Peterson terminated an employee for having taken Biofuel to a laboratory for examination of levels of biodiesel.

35. As further evidence of knowledge, DOER audit revealed that Peterson was not disclosing *any* biodiesel content to its customers. Federated Mutual Insurance Co. v. Peterson's Oil Service, Inc., No. 22-10517, Doc. Nos. 1, 1-2 (D. Mass., filed April 7, 2022).

36. Peterson owner and president, Howard Peterson, Jr., as a person that has spoken to Congress on behalf of the New England Fuel Institute, is aware of the dangers posed by elevated biodiesel in heating fuel.

37. Plaintiff routinely saw the damage caused by Biofuel to Peterson customers.

38. Plaintiff reported his concern and opposition to the elevated and underreported levels of biodiesel in Peterson fuel to Peterson officials, including Peterson owner and president, Howard Peterson, Jr., and Peterson vice president, Kristen Halus.

39. Peterson officials said they are aware of concerns regarding the elevated content of biodiesel in Peterson fuel.

## CAUSES OF ACTION

### COUNT I – FAILURE TO ACCOMMODATE IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B

40. Based on the foregoing, the Defendant failed to accommodate the Plaintiff pursuant to G.L. c. 151B, § 4(16) in that: (1) The Plaintiff was a qualified handicapped person; (2) He needed a reasonable accommodation due to his handicap to transition back to work; (3) The Defendants were aware of his handicap and that he needed a reasonable accommodation; (4) The Defendants was also aware of a means to reasonably accommodate his handicap, and, alternatively, failed to investigate a means to reasonably accommodate his handicap; and (5) The Defendant failed to provide a reasonable accommodation.  Consequently, the Plaintiff suffered damages.

### COUNT II – DIABILITY DISCRIMINATION IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B

41. Plaintiff reasserts herein each allegation in paragraphs 1 through 16 as if set forth fully in this count of the Complaint.

42. Based on the foregoing, the Plaintiff asserts that pursuant to G.L. c. 151B, § 4(4): (1) He is a qualified handicapped person; (2) The Defendants knew he was a handicapped person

within the meaning of the law; (3) He was able to perform the essential functions of the position with or without a reasonable accommodation; and (4) He suffered an adverse employment action because of his disability. Consequently, the Plaintiff suffered damages.

### COUNT III – DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

43. Plaintiff reasserts herein each allegation in paragraphs 1 through 16 as if set forth fully in this count of the Complaint.

44. Additionally, and/or alternatively, the Plaintiff asserts that pursuant to 42 U.S.C. § 12112(a): (1) He was disabled within the meaning of the law; (2) He was able to perform the essential functions of the job, with or without reasonable accommodation; (3) The Defendants knew that he was a qualified disabled person; and (4) The Defendants took an adverse employment action against the Plaintiff because of his disability. Consequently, the Plaintiff suffered damages.

### COUNT IV – RETALIATION IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B

45. Plaintiff reasserts herein each allegation in paragraphs 1 through 16 as if set forth fully in this count of the Complaint.

46. Additionally, and/or alternatively, the Plaintiff asserts that pursuant to G.L. c. 151B, § 4(4): (1) He engaged in protected conduct when he took a leave of absence and/or requested a workplace accommodation; (2) He thereafter suffered an adverse employment action; and (3) A causal connection exists between his protected activity and that adverse action. Consequently, the Plaintiff suffered damages.

### COUNT V – RETALIATION IN VIOLATION OF THE ADA

47. Plaintiff reasserts herein each allegation in paragraphs 1 through 16 as if set forth fully in this count of the Complaint.

48. Additionally, and/or alternatively, the Plaintiff asserts that pursuant to 42 U.S.C. § 12203(a): (1) He engaged in protected activity when he took a leave of absence and/or requested a workplace accommodation; (2) The Defendants were aware of that protected activity; (3) The Defendants thereafter took an adverse employment action against him; and (3) A causal connection exists between his protected activity and that adverse action.  Consequently, the Plaintiff suffered damages.

## COUNT VI – RETALIATION IN VIOLATION OF MASS. GEN. LAWS CHAPTER 149

49. Plaintiff reasserts herein each allegation in paragraphs 1 through 16 as if set forth fully in this count of the Complaint.

50. Additionally, and/or alternatively, the Plaintiff asserts that pursuant to G.L. c. 149, §§ 148C(i), 150: (1) He engaged in protected conduct when he requested to take sick time under Massachusetts earned sick time laws; (2) He was thereafter terminated; and (3) A causal connection existed between that protected activity and his termination.  Consequently, the Plaintiff suffered damages.

## COUNT VII – VIOLATION OF 31 U.S.C. § 3730(h)

51. Plaintiff reasserts herein each allegation in paragraphs 1 through 39 as if set forth fully in this count of the Complaint.

52. Additionally, and/or alternatively, the Plaintiff asserts that he was terminated because of his conduct protected by the anti-retaliation provision of the federal False Claims Act, 31 U.S.C. § 3730(h).  Consequently, the Plaintiff suffered damages.

## COUNT VIII – VIOLATION OF 12 M.G.L. § 5J

53. Plaintiff reasserts herein each allegation in paragraphs 1 through 39 as if set forth fully in this count of the Complaint.

54. Additionally, and/or alternatively, the Plaintiff asserts that he was terminated because of his conduct protected by the anti-retaliation provision of the Massachusetts False Claims Act, 12 M.G.L § 5J.  Consequently, the Plaintiff suffered damages.

### COUNT IX – WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

55. Plaintiff reasserts herein each allegation in paragraphs 1 through 39 as if set forth fully in this count of the Complaint.

56. Additionally, and/or alternatively, the Plaintiff asserts that he was terminated because of his good faith conduct to protect the public from harm caused by unsafe elevated biodiesel levels in Peterson fuel.  Consequently, the Plaintiff suffered damages.

### REQUEST FOR RELIEF

**WHEREFORE**, the Plaintiff prays that this Honorable Court grant the following relief:

I. Judgment against the Defendant;

II. Damages, including compensatory (including back and front pay trebled), emotional distress, punitive, and/or liquidated, to the Plaintiff, as authorized or mandated by applicable law, in an amount to be determined at trial;

III. Costs and any reasonable attorney's fees;

IV. Pre-judgment and post-judgment interest;

V. Appropriate injunctive, declaratory and other equitable relief; and

VI. Such other relief as this Honorable Court may deem just and appropriate under the circumstances.

## **JURY DEMAND**

The Plaintiff hereby demands a trial by jury on all issues so triable.

                                                Respectfully submitted,
                                                Plaintiff,
                                                By his attorney,


                                                */s/ Lucas Newbill*
                                                Lucas Newbill, BBO No. 697176

                                                Law Offices of Lucas Newbill
                                                P.O. Box 1741
                                                Brookline, Massachusetts 02446
                                                Tel. 617-918-7567
                                                Fax. 617-910-2514
                                                lucas@lucasnewbill.com


Date: June 17, 2022


## CERTIFICATE OF SERVICE

     I hereby certify that this document was filed this day through the court's electronic-filing system (ECF) and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

                                                */s/ Lucas Newbill*
                                                Lucas Newbill, BBO No. 697176

Dated: June 17, 2022